IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| JOHN MILLER, | : | |
| Plaintiff | : | |
| VS. | : | |
| | : | NO. 5:04-CV-57 (WDO) |
| JIM WETHERINGTON, *et al.*, | : | |
| Defendants | : | PROCEEDINGS UNDER 42 U.S.C. § 1983 |
| | : | BEFORE THE U. S. MAGISTRATE JUDGE |

# RECOMMENDATION

Plaintiff JOHN MILLER is an inmate in the custody of the State of Georgia. He has sued defendants JIM WETHERINGTON, BRENDA MURRELL, WILLIAM DANFORTH, BEN CHARLES, and SANDRA SMITH alleging that they violated his constitutional rights while he was incarcerated at Dooly State Prison (Dooly) in Unadilla, Georgia. Plaintiff claims that the defendants have failed to keep the prison smoke free in violation of his Eighth Amendment and Americans With Disabilities Act (ADA) rights and that he was denied access to martial arts magazines in violation of his First Amendment right.

Before the court is the defendants' **MOTION FOR SUMMARY JUDGMENT**. Tab #24. The motion is supported by a brief, medical records, various other documents, and a deposition. The court advised the plaintiff of said motion and his duty to respond properly thereto. Tab #28. The plaintiff has filed a response to the defendants' motion. Tab #30. In entering this recommendation, the undersigned has carefully considered the defendants' motion and all attachments thereto, as well as the plaintiff's response.

## LEGAL STANDARDS
### A. Summary Judgment

Rule 56 of the *Federal Rules of Civil Procedure* dealing with motions for summary judgment provides as follows:

> *The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.*

Summary judgment can only be granted if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c); Warrior Tombigbee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). While the evidence and all factual inferences therefrom must be viewed by the court in the light most favorable to the party opposing the motion, the party opposing the granting of the motion for summary judgment cannot rest on his pleadings to present an issue of fact but must make a response to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts present in the case which must be presented to a jury for resolution. *See Van T. Junkins & Assoc. v. U.S. Industries, Inc.*, 736 F.2d 656, 658 (11th Cir. 1984).

Specifically, the party seeking summary judgment bears the initial burden to demonstrate to the court the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show that there is an absence of any genuine issue of material fact. *Hairston v. The Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir.1998). In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences drawn from this, in the light most favorable to the non-moving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

If the moving party successfully meets this burden, the burden then shifts to the non-moving party to establish by going beyond the pleadings, that there are genuine issues of material fact to be resolved by a fact-finder. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).[1]

## DISCUSSION
### 1. Respondeat Superior

It is readily apparent to the undersigned that plaintiff is attempting to invoke liability against defendant WETHERINGTON based upon the theory of *respondeat superior*. In a properly pled complaint under 42 U.S.C. §1983, a plaintiff must allege that any defendant charged with violating his constitutional rights was either personally involved in violating those rights or that the act or acts complained of was carried out pursuant to an official policy or custom promulgated by the named defendant. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691-92 (1978).

In the case at bar, plaintiff MILLER fails to allege any causative link between defendant WETHERINGTON and the denial of his constitutional rights; that is, he is seeking to impose liability upon defendant WETHERINGTON because of his position as Commissioner of the Georgia Department of Corrections. Nor does the plaintiff contend that this defendant was responsible for any policy designed to deny plaintiff his constitutional rights. Instead, it appears that plaintiff predicates his claims against defendant WETHERINGTON solely upon the theory of *respondeat superior*. Such is not permitted under the law. *See Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985); *see also Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). Therefore, defendant WETHERINGTON is entitled to summary judgment.

---

[1] *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (the purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial); *Brown v. City of Clewiston*, 848 F.2d 1534, 1543 (11th Cir. 1988) (the question is whether the record as a whole could lead a rational trier of fact to find for the nonmovant).

## 2. ADA

Plaintiff claims that the defendants have violated his rights under the ADA because his asthma was aggravated because he was not placed in a completely smoke free cell and dormitory.

The ADA is applicable to state prisons and state prisoners. Pennsylvania Department of Corrections v. Yeskey, 524 U.S. 206 (1998).

To establish a claim under Title II of the Americans with Disabilities Act (ADA), a plaintiff must show that (1) he is a qualified individual with a disability; (2) that he was excluded from participation in a public entity's services; and (3) such exclusion or discrimination was by reason of his disability. 42 U.S.C. §12132.

Plaintiff cannot show that he is a qualified individual within the meaning of the ADA. Under the ADA, a disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual..." *See* 42. U.S.C. §12102(2)(A). Major life activities constitute "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. " *See* 29. C.F.R. 1630.2(i). Asthma does qualify as a physical impairment because of its effect on the respiratory system. However, just because plaintiff suffers from asthma, does not mean that he is disabled under the ADA.

In the present case, plaintiff's asthma does not limit a major life activity. Medical records show that plaintiff's asthma has always been considered mild to moderate; that he has only had one minor attack while incarcerated at Dooly and it was caused because plaintiff chose not to use his prescribed inhaler; that he does not require any restrictive profiles; and, that his condition is well controlled with medication. Because plaintiff cannot show that his asthma condition substantially limits a major life function, the defendants are entitled to summary judgment on this claim.

### 3. Environmental Tobacco Smoke

The Supreme Court has held that involuntary exposure to environmental tobacco smoke (ETS) can state a claim for cruel and unusual punishment under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25 (1993). In *Helling*, the Court held that the Eighth Amendment protects against unreasonable risk of damage from ETS, including damage to the plaintiff's future health. *Id*. at 35. In order to prove deliberate indifference under the Eighth Amendment on the part of the defendants, the plaintiff must show both objective and subjective factors. *Id*.

To show the objective factor, the plaintiff must show that he himself is being exposed to unreasonable levels of ETS. *Id*. Whether or not the prison has a formal smoking policy is relevant to this determination. *Id*. The objective factor also requires the court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* (emphasis in original) to such as risk." *Id*. at 36.

The subjective factor, deliberate indifference, should be determined in light of the prison authorities current attitudes and conduct. *Id*. at 36. This includes whether or not the prison has a smoking policy and how well it is administered. *Id*. at 36-37.

In support of their motion for summary judgment, the defendants have submitted the plaintiff's medical records as well as the affidavit of defendant MURRELL. The medical records and affidavit indicate that the plaintiff's Eighth Amendments rights have not been violated by exposure to second hand smoke.

Defendant MURRELL avers that smoking is not permitted at Dooly, but that tobacco products are not considered contraband. Therefore, any inmate found to be in violation of the no smoking policy is issued a disciplinary report. Further, defendant MURRELL inquired of the inmates as to whether they would like to live in a tobacco-free dormitory. This proved to be difficult, so a tobacco-free dormitory was not established for approximately one year. Prior to the establishment of the tobacco-free dormitory, plaintiff only complained of second-hand smoke on one occasion and stated that he would not, and could not, report a person who violates the policy. Moreover, he does not suffer from any medical problems, nor was his asthma aggravated, as a result of his exposure to second-hand smoke.

In the court's view, plaintiff MILLER has failed to establish that he was subjected to cruel and unusual punishment under the Eighth Amendment by exposure to ETS. The plaintiff has submitted no objective evidence to show that he has been exposed to unreasonably high amounts of second-hand smoke. Therefore, the plaintiff cannot meet the two part *Helling* test and the defendants are entitled to summary judgment on this claim.

### 4. First Amendment

Finally, plaintiff complains that his First Amendment rights were violated by the defendants when he was not permitted to receive "Shaolin Chin Na" and "Effortless Combat Throws" magazines.

As noted by the Eighth Circuit in *Hamilton v. Schriro*, 74 F.3d 1545, 1550 (8th Cir. 1996), prison inmates "do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545, (1979). Moreover, "federal courts must take cognizance of the valid constitutional claims of prison inmates," *Turner v. Safley*, 482 U.S. 78, 84, (1987), which include actions based on free exercise rights protected by the First Amendment. *See Pell v. Procunier*, 417 U.S. 817, 822, (1974).

However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125,(1977). "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." *Jones*, 433 U.S. at 125.

There are several factors used to determine whether a prison regulation is constitutional. First, there must be a "valid, rational connection" between the prison restriction and the legitimate government interest put forward to justify it. *McCorkle v. Johnson*, 881 F.2d 993, 995 (11th Cir. 1989). The second factor in evaluating the reasonableness of a prison restriction is the alternative means of exercising the asserted right remain open. *Id*. at 996. The next inquiry is the impact the accommodation of the asserted constitutional right will have on the guards and other inmates and on the allocation of prison resources generally. *Id*. Finally, the presence of workable alternatives is evidence of the unreasonableness of the restriction imposed. *Id*.

In the present case, Standard Operating Procedure (SOP) IIB04-0001 prohibits publications that depict, describe or encourage activities that may lead to physical violence or group disruption. Plaintiff was informed that he would not be allowed to receive these magazines because they depicted violence. Moreover, in his deposition, plaintiff admitted that an inmate familiar with martial arts could be a security risk. Tab #29 at 26-27. Because SOP IIB04-001 is rationally related to the legitimate penological interest of preventing violence in prison, plaintiff's claim that the confiscation of his martial arts magazines violated his First Amendment rights must fail and the defendants are entitled to summary judgment on this claim.

Accordingly, IT IS RECOMMENDED that the defendants' MOTION FOR SUMMARY JUDGMENT (Tab #24) be **GRANTED**. Pursuant to 28 U.S.C. §636(b)(1) the parties may serve and file written objections to this RECOMMENDATION with the district judge to whom the case is assigned WITHIN TEN (10) DAYS after being served with a copy thereof.

SO ORDERED, this 3rd day of AUGUST, 2005.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE